UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

FILED

2004 NOV 30  A 11: 50

U.S. DISTRICT COURT
EASTERN DIST. TENN

BY_____DEP. CLERK

MR. & MRS. JOHN AND JANE DOE )
                             )
          Plaintiffs         )
                             )
v.                           )          No._____
                             )          Judge:_____
PHIL BREDESEN, Governor of the )
     State of Tennessee,     )
RANDALL NICHOLS, District Attorney )
     for the 6th Judicial District of the )
     State of Tennessee, and )
MARK GWYN, Director of the   )
     Tennessee Bureau of Investigation )
                             )
          Defendants         )


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
COMPLAINT AND MOTION FOR A TEMPORARY
RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**


Plaintiffs Mr. and Mrs. John and Jane Doe respectfully submit this memorandum of law in support of their complaint and in support of their motion for a temporary restraining order and a preliminary injunction.

## INTRODUCTION

Plaintiff John Doe requests this Court issue a declaratory judgment finding Tenn. Code Ann. §§ 40-39-211(a) and (c) and Tenn. Code Ann. §§ 40-39-202(23) and (24) unconstitutional as applied to him. He further requests this Court issue a declaratory judgment finding Tenn. Code Ann. § 39-17-1004 unconstitutional on its face. Plaintiff Jane Doe requests this Court to issue a declaratory judgement finding that Tenn. Code Ann. §§ 40-39-211(a) and (c) are unconstitutional as applied to

John Doe due to the effect such application has on her rights to association and family privacy. Plaintiffs further ask this Court to enter an order temporarily and permanently enjoining the Defendants from enforcing Tenn. Code Ann. §§ 40-39-211(a) and (c) against Plaintiff John Doe. In addition, Plaintiffs also request this Court to enter an order ordering the Defendants to pay the Plaintiffs' attorney's fees as part of the costs of this action.

## I.  BACKGROUND

After January 1, 1995 and prior to July 1, 2003, Plaintiff John Doe pled guilty in the United States District Court Eastern District of Tennessee to a violation of 18 U.S.C. § 2252(a)(2)(B). This offense is equivalent under Tennessee law to aggravated sexual exploitation of a minor, as defined in Tenn. Code Ann. § 39-17-1004.

After January 1, 1995 and prior to July 1, 2003, Plaintiff John Doe purchased a home in Knox County, Tennessee. This home is located within one thousand feet (1,000') of a school. At the time of the purchase of the home, no statutory restrictions existed prohibiting sexual offenders from establishing a residence or residing in any particular location. Plaintiffs John and Jane Doe were married in 1998 and have lived in this home since their marriage.

Plaintiff Jane Doe is the mother of a child from a previous marriage. This minor child has lived in Plaintiffs' home as John Doe's step-child since the couple's marriage in 1998. At the time Plaintiff John Doe began living with his step-child, no restrictions were in place that prohibited a sexual offender from living with a child of whom he or she was not the parent. Plaintiffs also have two minor children that have been born since their marriage and who live with them.

2

## II. THE CHALLENGED STATUTORY PROVISIONS

On June 8, 2004, Governor Phil Bredesen signed into law the "Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004," ("Act of 2004"). Tenn. Code Ann. § 40-39-201, et seq. The Act of 2004 amended the previous sexual offender act, the "Sexual Offender Registration and Monitoring Act," ("Act of 2003"), enacted one year earlier. Tenn. Code Ann. § 40-39-101, et seq.

### A. Tenn. Code Ann. §§ 40-39-211(a) and (c).

Under the Act of 2003, sexual offenders were for the first time restricted from living within certain zones. Sexual offenders were prohibited from "establish[ing] a residence . . . within one thousand feet (1000') of the property on which any public school, private or parochial school, licensed day care center, or any other child care facility is located." Tenn. Code Ann. § 40-39-111(a). Sexual offenders who had already established their residencies prior to their convictions or incarcerations and returned to those residences were not considered to be in violation of the statute. See Tenn. Att'y Gen. Op. No. 04-053 (March 25, 2004)(copy attached as Exhibit A).

In addition, offenders were for the first time prohibited from "establish[ing] a residence or any other living accommodation where a minor resides," with the exception of instances where the offender was the parent of the minor and the minor was not a victim of the offender. Tenn. Code Ann. § 40-39-111(c). A violation of either of these provisions was a Class A misdemeanor. Tenn. Code Ann. § 40-39-111(e).

The Act of 2004, effective August 1, 2004, repealed the Act of 2003. The Act of 2004 broadened the living restrictions placed on sexual offenders the previous year. Specifically, the words "establish a residence" were deleted from the school zone restriction and the word "reside"

3

was substituted. Tenn. Code Ann. § 40-39-211(a). Thus, offenders are now prohibited from living within one thousand feet (1,000') of a school or day care facility regardless of when they established their residences. This change in wording was also made to the residing with a minor restriction, thereafter restricting sex offenders from living with any minor of whom that offender was not the parent, regardless of when the offender had begun living with the minor. Tenn. Code Ann. § 40-39-211(c).

The above mentioned changes were an immediate source of constitutional concern. On March 25, 2004, Attorney General Paul Summers expressed his opinion that the residency restrictions found in both the Act of 2003 and the then proposed Act of 2004 were "subject to strong constitutional challenge under the United States and Tennessee Constitutions." See Tenn. Att'y Gen. Op. No. 04-053 (March 25, 2004) (Exhibit A). According to Attorney General Summer's opinion, the residency restrictions under both the 2003 and 2004 acts likely violated the Ex Post Facto Clause of the United States Constitution and also infringed upon offenders' substantive and procedural due process rights under the Fourteenth Amendment. Id.

The first challenge to the residency restrictions came shortly after the enactment of the Act of 2004 when suit was brought challenging the constitutionality of Tenn. Code Ann. § 40-39-211. Doe v. Bredesen, et al., No. 3:04-0670 (M.D. Tenn. filed Aug. 8, 2004). On August 19, 2004, Judge Todd Campbell, United States District Court Middle District of Tennessee, enjoined the defendants in that case from enforcing Tenn. Code Ann.§ 40-39-211(a) retroactively against "sexual offenders," as defined in Tenn. Code Ann. § 40-39-202(15), pending trial or further order of the Court. Doe v. Bredesen, et al., No. 3:04-0670 (M.D. Tenn. Aug. 19, 2004)(order granting preliminary injunction)(copy attached as Exhibit B). Judge Campbell found that the plaintiff had demonstrated

4

a likelihood of success on the merits of his claim that the provisions as applied retroactively to sex offenders violated the Ex Post Facto Clause of the United States Constitution.[1] Id.

Although Judge Campbell's ex-post facto analysis is equally persuasive with regard to Tenn. Code Ann. § 40-39-211(c) (prohibiting sex offenders from living with children not their own), his injunction order did not address the constitutionality of this provision.

**B.    Tenn. Code Ann. §§ 40-39-202(23) and (24).**

Under the Act of 2003, aggravated sexual exploitation of a minor was classified as a "sexual offense," as were most sexual criminal offenses. Tenn. Code Ann. § 40-39-102(5). "Sexually violent offenses" were restricted to those offenses that involved some form of physical sexual violence: aggravated rape, rape, aggravated sexual battery, rape of a child, and criminal attempt of any of the aforementioned offenses. Tenn. Code Ann. § 40-39-102(6).

However, with the enactment of the Act of 2004, many criminal offenses were redefined as a "violent sexual offense," including aggravated sexual exploitation of a minor. Tenn. Code Ann. § 40-39-202(24). This redefinition of offenses not only changed the level of crime committed by a person, but also denoted that person a "violent sexual offender." Tenn. Code Ann. § 40-39-202(23).

Under the Act of 2004, violent sexual offenders are required to remain on the Tennessee Bureau of Investigation ("TBI") Sexual Offender Registry ("SOR") for the remainder of their lives with no apparent avenues open for removal from the SOR. Tenn. Code Ann. § 40-39-207(g)(1)(B).

---

[1]This preliminary injunction was amended on September 30, 2004 by Judge Campbell in order to clarify that defendants were enjoined from enforcing the statutory provision against sexual offenders "who committed his or her crime prior to August 1, 2004."

### C. Tenn. Code Ann. § 39-17-1004

As discussed above, Tennessee's aggravated sexual exploitation statute, Tenn. Code Ann. § 39-17-1004, is listed under Tenn. Code Ann. § 40-39-202(24) as a "violent sexual offense." Tenn. Code Ann. § 39-17-1004 states:

> (a)(1) It is unlawful for a person to knowingly promote, sell, distribute, transport, purchase or exchange material, or possess with the intent to promote, sell, distribute, transport, purchase or exchange material, which includes a minor engaged in: (A)sexual activity; or (B) simulated sexual activity that is patently offensive. (2) In a prosecution under this subsection (a), the trier of fact may infer that a participant is a minor if the material through its title, text, visual representation or otherwise represents or depicts the participant as a minor. . . .

The constitutionality of Tennessee's sexual exploitation statute, Tenn. Code Ann. § 39-17-1003, is currently being reviewed by the Tennessee Court of Criminal Appeals at Knoxville on an interlocutory appeal from State v. Butler, No. 76909 (Knox Co. Crim. Ct. Div. 1 Feb. 5, 2004)(order granting interlocutory appeal)(copy attached as Exhibit C). The Criminal Court for Knox County, Division I, recently held that Tenn. Code Ann. § 39-17-1003(b) is unconstitutional and overbroad, but that this subsection could be severed from the rest of the statute under the Doctrine of Severability. State v. Butler, No. 76909 (Knox Co. Crim. Ct. Div. 1 Dec. 9, 2003)(Memorandum Opinion and Order)(copy attached as Exhibit D).

## III. ARGUMENT

### A. Application of Tenn. Code Ann. §§ 40-39-211(a) and (c) to Plaintiff John Doe constitutes a retroactive punishment in violation of the Ex Post Facto Clause.

The residency restrictions in Tenn. Code Ann. §§ 40-39-211(a) and (c) impose a new punishment for Plaintiff John Doe's crime that was not in place at the time he was convicted. Although the Tennessee legislature stated its intent to impose a nonpunitive regulatory scheme in enacting the Act of 2004, see Tenn. Code Ann. 40-29-201(6), the effect of the law is so punitive that

6

it negates the State's attempt to craft such nonpunitive legislation. At the time Plaintiff John Doe was convicted he could live anywhere he wanted. The State is now prohibiting Plaintiff John Doe from living in many areas of the community, including the area where his home is located. Plaintiff John Doe is now restricted from living with his step-child even though the child was not a victim of the Plaintiff and Plaintiff has lived with the child for the last seven years. If Plaintiff John Doe does not move and continues to live with his step-child, he is subject to arrest and prosecution for a Class E felony.

Increasing the punishment for a crime after the crime was committed is also prohibited under the Ex Post Facto Clause of the federal and state constitutions. See Cutshall v. Sundquist, 193 F.3d 466, 476 (6th Cir. 1999), citing Lynce v. Mathis, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997). In analyzing whether a statute imposes a new punishment for a crime, federal courts have applied a two prong test: 1) whether the legislature intended to impose a punishment or enact a regulatory scheme that was civil and nonpunitive; and 2) whether the effect of the law is so punitive that it negates the State's attempt to craft civil restrictions. Doe v. Miller, 298 F.Supp.2d 844, 868 (S.D. Iowa 2004), citing Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003)(internal citations omitted).

In Doe v. Miller, a case directly on point, sex offenders in the state of Iowa brought a class action challenging the constitutionality of an Iowa statute prohibiting a person who had committed a criminal sex offense against a minor from living within two thousand feet (2000') of a school or child care facility. After concluding that the legislative intent behind the challenged statute was civil and nonpunitive, the United States District Court for the Southern District of Iowa examined the effect of the statute to see if it was punitive in nature.

7

The <u>Miller</u> court employed the same factors to test the Iowa law as those used by the United States Supreme Court in <u>Smith v. Doe</u>, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) and <u>Kennedy v. Mendoza-Martinez</u>, 372 U.S. 144, 168-9, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963):

> whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned ...

<u>Doe v. Miller</u>, 298 F.Supp.2d at 868 (2004). In analyzing the Iowa law, the <u>Miller</u> court found that the residency restrictions were historically regarded as punishment, imposed an affirmative restraint on those subject to it, did promote the traditional aims of punishment, and went beyond what was reasonably necessary to protect the public. <u>Id.</u>at 869-87. Balancing the <u>Kennedy</u> factors, the <u>Miller</u> court found the Iowa law to constitute a retroactive punishment in violation of the Ex Post Facto Clause of the United States Constitution. <u>Id.</u> at 871.

The <u>Miller</u> court's ruling is persuasive that statutes restricting sexual offenders from living in certain areas of the community imposes a new punishment in violation of the Ex Post Facto Clause. Tenn. Code Ann. § 40-39-211(a) is similar to the Iowa residency restriction, yet is more stringent as it restricts sexual offenders from living within one thousand feet (1000') of any school or child care facility. Due to the number of schools and child care facilities in any metropolitan area, the restrictions include enough geographical area to cause the restriction to closely resemble the historical practice of punitive banishment. <u>See</u> <u>Doe v. Miller</u>, 298 F.Supp.2d at 869 .

Moreover, at least one district court in Tennessee preliminarily agrees with the <u>Miller</u> court's holding that such residency restrictions are in violation of the Ex Post Facto Clause. A plaintiff

proceeding under the pseudonym John Doe brought an action in the United States District Court Middle District of Tennessee challenging the residency restrictions of the Act of 2004. <u>Doe v. Bredesen, et al.</u>, No. 3:04-0670 (M.D. Tenn. filed Aug. 8, 2004). In his order of preliminary injunction, Judge Todd Campbell found that Tenn. Code Ann. § 40-29-211(a) "went beyond any intent to craft a civil regulatory scheme and is, in fact, punitive." <u>Doe v. Bredesen, et al.</u>, No. 3:04-0670 (M.D. Tenn. Aug. 19, 2004)(order granting preliminary injunction)(Exhibit B). Judge Campbell further held that Tenn. Code Ann. § 40-39-211(a) constituted a retroactive punishment forbidden by the Ex Post Facto Clause. <u>Id.</u>

For the same reasons that the <u>Miller</u> court and Judge Campbell found the residency restrictions to violate the Ex Post Facto Clause, this Court should find that Tenn. Code Ann. §§ 40-39-211(a) and (c) violate Plaintiff John Doe's rights against ex post facto laws.

**B.      Tenn. Code Ann. §§ 40-39-211(a) and (c) unconstitutionally infringes upon Plaintiffs Mr. and Mrs. John and Jane Doe's fundamental rights to family choice and privacy.**

Plaintiffs allege that Tenn. Code Ann. §§ 40-39-211(a) and (c) violate their fundamental rights to individual privacy because the provisions infringe upon the Plaintiffs' rights to decide how their family relationships should be structured and their freedom of association.

The United State Supreme Court has recognized a fundamental right to privacy and choice regarding family matters protected under substantive due process. <u>Doe v. Miller</u>, 298 F.Supp.2d 844, 872. See <u>Albright v. Oliver</u>, 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d. 114 (1994); <u>Planned Parenthood of Southeastern Pennsylvania v. Casey</u>, 505 U.S. 833, 847-849, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); <u>Zablocki v. Redhail</u>, 434 U.S. 374, 383-85, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); <u>Moore v. City of East Cleveland, Ohio</u>, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977);

9

Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). When assessing whether a law violates an individual's fundamental rights, the burden is upon the state to prove that the law is narrowly tailored to achieve a compelling state interest and the that least restrictive means are used to achieve those objectives. Roe v. Wade, 410 U.S. 113, 155-56, 93 S.Ct. 705-35 L.Ed.2d 147 (1973).

Furthermore, Tenn. Code Ann. §§ 40-39-211(a) and (c) violate the Plaintiffs' privacy rights under the Tennessee Constitution. The Tennessee Constitution affords greater individual privacy protections than the federal constitution. Campbell v. Sundquist, 926 S.W.2d 250 (Tenn. App. 1996). Included within these protections is activity which involves intimate questions of personal and family concern. Id. at 266.

In Doe v. Miller, the court addressed whether Iowa residency restrictions infringed upon the plaintiffs' privacy rights:

> The fundamental right that Plaintiffs assert is a right to privately choose how they want to conduct their family affairs. Included in this right is the right to determine those members of the family with whom one wants to reside. ... Moreover, the Act restricts free choice of association, not only for the offenders, but for their family members as well. Upon completion of the sex offender's penal sentence, the offender has paid his or her debt to society and should have the opportunity to start anew. If an offender's family wishes their return, and the individual is not dangerous, then the choice should be theirs to make. Beyond the offenders, non-offender spouses should also be free from the Hobson's choice of whether to stay with the person to whom they are legally bound, which could involve moving away from the spouse's family, friends, and support network, maintaining separate residences, or dissolving the marriage.

Doe v. Miller, 298 F.Supp.2d at 873. The Miller court went on to hold that:

> The right to privately choose how to conduct family affairs and decide where and with whom family members will live is held by the entire family; the sex offender is not the only factor in the domestic calculus. Inherent in the right is that the freedom of choice must permeate to all members of the family. As § 692A.2A interferes with these choices, the Court finds

10

that the Act infringes upon Plaintiffs' fundamental rights to govern their family affairs as they so desire and without undue interference from the State.

Id. at 874.

After finding that the Iowa law did interfere with Plaintiff's fundamental rights to family choice and privacy, the Miller court applied the strict scrutiny analysis to determine whether the Act was narrowly tailored to address a compelling State interest. In addressing the compelling state interest, the court agreed with the State that protecting children from sex offenders was a compelling state interest. Doe v. Miller, 298 F.Supp.2d at 875. However, the court disagreed with the State's argument that the buffer zone created around schools and child care facilities by the residency restriction reduced the "precursor" events leading to re-offense and eliminated nearby access to potential victims. Id. The court held that without evidence that the two thousand foot buffer would actually protect children, the Act was not narrowly tailored to achieve a compelling state interest. Id. at 876. Moreover, in restricting all sex offenders without regard to the actual danger to the community, the Act did not apply the least restrictive means necessary to achieve its goal. Id.

This case clearly involves intimate questions of personal and family concern. Mr. and Mrs. John Doe have been married for over seven years and they have three children, one of whom is the child of Mrs. Doe from a previous marriage. This child has been the step-child of John Doe since the age of four and has lived with him continuously since that time. If the residency restrictions are enforced against Plaintiff John Doe, this family will be torn apart: Plaintiff John Doe will be prohibited from living with his step-child; Mrs. Doe will be in the unenviable position of having to choose between living with her husband or her eldest child; and the two other children in the household will be forced to either live in a home without one of their parents, or in a home without

11

their older sibling. Furthermore, Plaintiff John Doe, and possibly his wife and his children, will be forced to find another home beyond one thousand feet (1000') of a school or child care facility.

For these reasons, the burden is upon the State to show "that the residency restrictions are narrowly drawn to increase protection of potential victims while avoiding unnecessary interference with sex offenders' ability to reside with family members." Tenn. Att'y Gen. Op. No. 04-053 (March 25, 2004)(Exhibit A).

**C.  Tenn. Code Ann. §§ 40-39-211(a) and (c) deprive Plaintiff John Doe of a liberty interest with insufficient notice and no opportunity to be heard in violation of the Due Process Clause.**

Before a state can deprive an individual of a liberty interest, the state must afford the individual notice and an opportunity to be heard. Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In order for notice to be sufficient, a person of ordinary intelligence must be given the opportunity to know what is prohibited so that he may act accordingly. Grayned v. Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294 , 33 L.Ed.2d 222 (1972).

As previously discussed, Tenn. Code Ann. §§ 40-39-211(a) and (c) deprive the Plaintiffs of the fundamental rights of family privacy. Yet, there is no statutory procedure in the Act of 2004 to exclude offenders such as Plaintiff John Doe who wish to remain living with family members, including those who live within a restricted zone. See Tenn. Att'y Gen. Op. No. 04-053 (March 25, 2004)(Exhibit A). Furthermore, the statutory provisions do not provide sufficient notice to the Plaintiff John Doe as it places the burden on the Plaintiff John Doe to ensure that he is not living within a restricted area, yet give him  no guidelines concerning how that distance should be measured. See Doe v. Miller, 298 F.Supp.2d 844, 877-78 (S.D. Iowa 2004). Nor does the Act of 2004 establish procedures for how law enforcement agencies are to implement these rules. In one

county an offender might be given an opportunity to find new housing, whereas in another county an offender may be arrested with no prior warning. See id.

Without consistent enforcement and an opportunity to be excluded from the restriction, Plaintiff John Doe has not been afforded adequate individual notice and an opportunity to be heard as required under the Due Process Clause of the Fourteenth Amendment.

**D.** **Registration restrictions under the Act of 2004 unconstitutionally require Plaintiff John Doe to provide incriminating evidence against himself in violation of his Fifth Amendment rights.**

Under the Fifth Amendment of the United States Constitution, a person can not be compelled to be a witness against himself. Under this right, a person does not have to answer official questions, civil or criminal, formal or informal, that might incriminate him in future criminal proceedings. Lefkowitz v. Turley, 414 U.S. 70,77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973).

In this case, Plaintiff John Doe would be required under Tenn. Code Ann. § 40-39-204(b) to quarterly appear in person to a designated law enforcement agency to verify his identifying information, including his address, for the TBI SOR. In doing so, Plaintiff John Doe would be admitting that he lives within a restricted zone and is committing a criminal offense. See Doe v. Miller, 298 F.Supp.2d 844, 878-79 (2004). This information could be used at any time to prosecute and convict Plaintiff John Doe of a Class E felony offense. Yet, if Plaintiff John Doe refused to provide this information he would again be subject to prosecution for a Class E felony. Tenn. Code Ann. § 40-39-208.

For these reasons, the Act of 2004 requires sex offenders to provide incriminating evidence against themselves in violation of the Fifth Amendment. See id. at 879.

13

**E.    Aggravating Plaintiff John Doe's criminal offense from a "sexual offense" to a "violent sexual offense" violates the Ex Post Facto Clause.**

The passage of ex post facto laws are banned under both the federal and state constitutions. U.S. Const., art. I, § 10, cl. 1; Tenn. Const., art. I, § 11. A law violates the ex post facto prohibition if it applies to events occurring before its enactment and disadvantages the offender affected by the law. Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). See Cutshall v. Sundquist, 193 F.3d 466, 476 (6th Cir. 1999), citing Lynce v. Mathis, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997). Four types of ex post facto laws have been identified by the United States Supreme Court:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

Doe v. Miller, 298 F.Supp.2d 844, 866 (S.D. Iowa 2004), quoting Calder v. Bull, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1796)(Chase, J.).

Tenn. Code Ann. §§ 40-39-202(23) and (24) violate the prohibition against ex post facto laws as applied to Plaintiff John Doe because it aggravates his past crime by redefining it as a "violent sexual offense." Prior to the Act of 2004, his criminal offense was defined as a "sexual offense." This redefinition disadvantages him by branding him a "violent sexual offender" and as such requires him to remain on the TBI SOR for the remainder of his life. Where Plaintiff John Doe once looked forward to the opportunity to petition the court to be removed from the registry as a "sex offender",

14

it now appears that he has no avenue for proving that he is not a "violent sex offender," has been rehabilitated, and/or poses no threat of recidivism. See Tenn. Code Ann. § 40-39-207(g)(1)(B).

In Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), the United States Supreme Court addressed whether sexual offender registry laws that were applied retroactively violated the Ex Post Facto Clause of the United States Constitution. The Alaska Sex Offender Registry Act is similar to Tennessee's registry restrictions: if an offender is convicted of an aggravated sex offense, he must register for life and verify information quarterly. Id. at 1146. Offenders who knowingly fail to comply with Alaska's sex registry law are subject to criminal prosecution. Id. The plaintiffs in Smith challenged the retroactive application of the Act to them as an increased punishment for their past criminal convictions under the Ex Post Facto Clause. The Court held that, although retroactive, the Act did not violate the Ex Post Facto Clause because it was nonpunitive. Smith v. Doe, 538 U.S. at 105-6 (2003).

There is one very important fact that distinguishes Plaintiffs' case from Smith. In Smith, the plaintiffs were designated aggravated sex offenders at the time of their conviction and prior to the enactment of Alaska' sex registry laws. In this case, Plaintiff John Doe was originally convicted of a "sexual offense." It was not until the enactment of the Act of 2004 that Plaintiff John Doe's criminal offense was aggravated to a "violent sexual offense." This redefinition of the Plaintiff's criminal offense was made with no assessment of whether the Plaintiff really was "violent" or was likely to offend again.

This distinction causes Plaintiff John Doe to suffer a harsh disadvantage beyond the plaintiffs in Smith. Plaintiff John Doe is now required to fulfill the TBI SOR requirements for life, with no apparent opportunity for removal where he once looked forward to such an opportunity.

15

Each quarter he must personally present himself to the designated law enforcement agency and report that he is a "violent sexual offender" and update his information. This increased punishment on the Plaintiff John Doe, in addition to the added social stigma of being known as a "violent sexual offender," is an aggravation of his original offense and punishment in violation of the Ex Post Facto Clause.

**F.**     **Tenn. Code Ann. § 39-17-1004 is facially unconstitutional and cannot be used to trigger Plaintiff John Doe's classification as a "violent sexual offender."**

Tenn. Code Ann. § 39-17-1004 is being applied to Plaintiff John Doe in this case because he pled guilty to a federal offense equivalent under Tennessee law to aggravated sexual exploitation of a minor. Under the Act of 2004, a conviction in a federal court that would be classified as a "sexual offense"or "violent sexual offense" under Tennessee law shall be treated as such for purposes of classifying sexual offenders. Tenn. Code Ann. § 40-39-202(2). Therefore, Plaintiff John Doe is treated under the Act of 2004 as having committed a violation of Tenn. Code Ann. § 39-17-1004 and is required to register as a "violent sexual offender" as defined in Tenn. Code Ann. § 40-39-202(23).

Tennessee's aggravated sexual exploitation statute, Tenn. Code Ann. § 39-17-1004, modeled after the Tennessee sexual exploitation statute, Tenn. Code Ann. § 39-17-1003, is facially unconstitutional and abridges an individual's right to engage in a substantial amount of protected free speech under the First Amendment. "The showing that a law punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep,' suffices to invalidate *all* enforcement of that law. . ." Virginia v. Hicks, 539 U.S. 113, 118-119, 123 S.Ct. 2191, 2196, 156 L.Ed.2d 148 (2003)(internal citations omitted). This prohibition against all enforcement

16

of such an unconstitutional law should extend to the use of that law for the purposes of classifying an individual as a sexual offender.

Tennessee's aggravated sexual exploitation statute is vague and overbroad in several different respects. First, the statute prohibits possession of *any* material[2] that includes a minor engaged in sexual activity, even if that material does not appeal to prurient interests, is not patently offensive, or has serious literary, artistic, political, or scientific value. See Ashcroft v. Free Speech Coalition, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002)(holding that sections of the Child Pornography Prevention Act of 1996 were vague and overbroad and abridged the defendant's right to engage in a substantial amount of protected speech under the First Amendment).

Second, the statute fails to clearly define its prohibitions by using the term "possess," without giving a definition for the term in the statute. Due to rapidly advancing computer technology, the term "possess" may be interpreted several ways. By not defining the term, the statute fails to provide citizens with enough information to differentiate between lawful and unlawful behavior. See Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

Third, the trier of fact may "infer" that a participant is a minor if the material represents or depicts the participant as a minor, resulting in the prohibition of materials that use youthful looking adult actors or models or "virtual child pornography." A blanket prohibition of such material based

---

[2]"Material" is defined as:
(A) Any picture, drawing, photograph, motion picture film, videocassette tape or other pictorial representation; or
(B) Any statue, figure, theatrical production or electrical production; or
(C) Any text or image stored on a computer hard drive, a computer disk of any type, or any other medium designed to store information for later retrieval[.]
Tenn. Code Ann. § 39-17-1002(2).

17

upon the manner in which the material is packaged or presented, rather than the actual content of the material, chills a substantial amount of protected speech and infringes upon fundamental First Amendment rights. See Free Speech, 535 U.S. 234 (2002).

Finally, the statute is so facially unconstitutional that it cannot be remedied through the doctrine of severability. "The doctrine of elision allows a court, under appropriate circumstances when consistent with the expressed legislative intent, to elide an unconstitutional portion of a statute and find the remaining provisions to be constitutional and effective." State ex rel. Barker v. Harmon, 882 S.W.2d 352, 354 (Tenn.1994). Nonetheless, it is well-settled that the doctrine of elision is not favored in Tennessee. Memphis Planned Parenthood, Inc. v. Sundquist,175 F.3d 456, 496-497 (6th Cir. 1999). The doctrine of elision should only be applied where it is apparent from the face of the statute that the legislature would have enacted the legislation with the objectionable portions omitted. Id., quoting Harmon, 882 S.W.2d at 355 ("The inclusion of a severability clause in the statute has been held by this Court to evidence an intent on the part of the legislature to have the valid parts of the statute enforced if some other portion of the statute has been declared unconstitutional.").

For these reasons, use of the facially unconstitutional Tenn. Code Ann. § 39-17-1004 to trigger registration requirements against Plaintiff John Doe is prohibited and Plaintiff John Doe should therefore not be required to register as a sex offender under Tennessee law.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request this Court to issue a declaratory judgment that Tenn. Code Ann. §§ 40-39-211(a) and (c) and Tenn. Code Ann. §§ 40-39-202(23) and (24) are unconstitutional in their application to Plaintiffs Mr. and Mrs. John and Jane Doe and that Tenn. Code Ann. § 39-17-1004 is facially unconstitutional and may not be used to classify Plaintiff

18

John Doe as a sexual offender. Plaintiffs further respectfully request this Court to issue an order temporarily and permanently enjoining the Defendants from enforcing Tenn. Code Ann. §§ 40-39-211(a) and (c) against Plaintiff John Doe.

Respectfully submitted this 30th day of November, 2004.

ELDRIDGE & BLAKNEY, P.C.

DAVID M. ELDRIDGE (BPR #012408)
1404 Riverview Tower
900 South Gay Street
Knoxville, TN 37902-1838
865-544-2010

*Counsel for John Doe and Jane Doe*

19

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing pleading was forwarded, by hand delivery, facsimile, and/or placing the same in the United States mail, with proper postage affixed thereon to:

Robert E. Cooper, Jr.
Legal Counsel
Office of the Governor
State Capitol G10
Nashville, TN 37243

Pamela E. Beck
Staff Attorney
Tennessee Bureau of Investigation
901 R S Gass Blvd.
Nashville, TN 37216

Paul G. Summers
Attorney General & Reporter
425 Fifth Ave. N.
P.O. Box 20207
Nashville, TN 37202-0207

Michael A. Meyer
Assistant Attorney General
425 Fifth Ave. N.
P.O. Box 20207
Nashville, TN 37202

Randall E. Nichols
District Attorney General
400 Main
P.O. Box 1468
Knoxville, TN 37901-1468

This 30th day of November, 2004.

DAVID M. ELDRIDGE

20