STATE OF TENNESSEE
OFFICE OF THE
**ATTORNEY GENERAL**
**PO BOX 20207**
**NASHVILLE, TENNESSEE 37202**

March 25, 2004

Opinion No. 04-053

Effect and constitutionality of HB 3232 prohibiting sex offenders from residing within 1,000 feet of a school

## QUESTIONS

1.      Tenn. Code Ann. § 40-39-111(a) provides that sex offenders may not "establish a residence . . . within one thousand feet (1000') of . . . any public school . . . ." Does that provision prohibit sex offenders from returning, after release from incarceration, to a former residence located within one thousand feet of a public school?

2.      If the answer to question number one is "no," would amendment of Tenn. Code Ann. § 40-39-111 by H.B. 3232 prohibit sex offenders from returning to a former residence located within one thousand feet of a public school?

3.      Would H.B. 3232, if enacted into law, violate any provision of the United States or Tennessee constitutions?

## OPINIONS

1.      No.  A sex offender who on release from incarceration returns to his pre-incarceration residence within the prohibited zone does  not "establish" residence within the meaning of Tenn. Code Ann. § 40-39-111(a).

2.      Yes.  The amendment of Tenn. Code Ann. § 40-39-111 by H.B. 3232 would prohibit sex offenders from returning to a former residence if it that residence was within one thousand feet of a public school.

3.      There is no direct authority from any controlling jurisdiction on this issue. However, such authority as exists indicates that H.B. 3232, if enacted into law, would be subject to serious constitutional challenges under the ex post facto clause of the United States Constitution and the due process clauses of the constitutions of the United States and Tennessee.

## ANALYSIS

1.    Current Law

Tenn. Code Ann. § 40-39-111(a) provides:

> No sexual offender as defined in § 40-39-102(4), shall knowingly establish a residence or any other living accommodation within one thousand feet (1000') of the property on which any public school, private or parochial school, licensed day care center, or any other child care facility is located.

The cardinal rule of statutory construction is to effectuate legislative intent. *Jones v. Garrett,* 92 S.W.3d 835 (Tenn. 2002). If the statute is unambiguous, courts will usually ascertain legislative intent from the plain and ordinary meaning of the statutory language. *Dixon v. Holland,* 70 S.W.3d 33 (Tenn. 2002).

In its present form, the language of Tenn. Code Ann. § 40-39-111(a) is clear and unambiguous. Under the commonly accepted meaning of the term "establish," the statute would not prohibit a sex offender from returning to a residence that he or she occupied before incarceration.[1] It only prohibits such an offender from taking up residence at a new location within a prohibited zone.[2] Under Tennessee law, a person's incarceration does not destroy his or her residence at a location outside the place of confinement.[3]

---

[1] Nor would it, in light of the explicit language of subsection (d) of that section, prohibit a sex offender from remaining at a registered residence after a school, daycare, or residence of a victim or victim's family member is later established within the one thousand foot (1,000') exclusion zone.

[2] Under both the legal and commonly accepted meanings of the term, the establishment of something involves the bringing about of something that did not previously exist. *Black's Law Dictionary* defines "residence" as "[t]he act or fact of living in given place for some time; the place where one actually lives, as distinguished from a domicile." *Black's Law Dictionary* 1050 (7th ed. 1999). "Establish" is defined as "[t]o settle, make, or fix firmly; to make or form; to bring about into existence." *Black's Law Dictionary* 449 (7th ed. 1999). *See also Webster's Ninth New College Dictionary* 425 (1988). Thus to establish residence is to bring into existence the act or fact of living in a given place for some time. A person cannot establish a residence if he or she has previously lived at that location.

[3] Residence should not be confused with domicile. Although a person can only have one domicile, he or she can have more than one residence under Tennessee law. *State Farm Fire and Cas. Co. v. White,* 993 S.W. 2d 40 (Tenn. App.1998) ; *McDonough v. State Farm Mutual Auto Ins. Co.,* 755 S.W. 2d 57, 65 citing *Denny v. Sumner County,* 184 S.W.14, 134 Tenn. 468 (1916). The reasoning in both cases indicates that physical absence does not extinguish a former "residence" in the legal sense. Thus, the involuntary incarceration of a person should not destroy his or her residence at another location.

This interpretation is also consistent with the legislature's use of the term "residency" in another portion of the code. *Cf. State v. Levandowski,* 955 S.W.2d 603, 605 (Tenn. 1997). Under Tenn. Code Ann. §2-2-102, "A citizen of the United States eighteen (18) years of age or older who is a resident of this state is a qualified voter unless the

Page 3

2. The proposed amendment

H.B. 3232 would amend Tenn. Code Ann. § 40-39-111(a) to delete the words "establish a residence or accept employment" and substitute the words "reside or work." The language of the bill is clear and unambiguous. Under both the legal and commonly understood meanings of the operative words, a sex offender would be prohibited from returning to a previously established residence upon release from incarceration if that residence is located in a prohibited zone.[4]

3. Constitutionality

This office has found no decision of any Tennessee or federal court dealing with the constitutionality of the Tennessee residency requirement.[5] Nor has the office found any decision by any United States District Court in Tennessee, the Court of the Appeals for the Sixth Circuit, or the Supreme Court of the United States dealing with the constitutionality of any of the similar provisions found in the laws of a number of other states.[6] However, decisions by three courts who have no controlling jurisdiction over Tennessee have struck down two states' residency restrictions as unconstitutional. *Doe v. Miller,* 298 F. Supp. 2d 844 (S.D. Iowa, Feb. 9, 2004), *appeal pending*;

---

citizen is disqualified under the provisions of this title or under a judgment of infamy pursuant to §40-20-112." One of the principles in light of which residency must be determined is that "[a] person does not gain or lose residence solely by reason of the person's presence or absence . . . while confined in a public prison . . . ." Tenn. Code Ann. §2-2-122(a)(7).

[4]In the legal sense, "Reside" is defined as "Live, dwell, abide, sojourn, stay, remain, lodge." *Black's Law Dictionary* 1051 (7th ed. 1997) In common parlance, the term has a similar meaning. Webster's Ninth New Collegiate Dictionary 1003 (1988).

[5]There is ample authority upholding the registration and notification requirements of the sex offender laws of Tennessee and other states, *e.g., Cutshall v. Sundquist,* 193 F.3d 466 (6th Cir. 1999), *cert. denied* 529 U.S. 1053 (2000); *Smith v. Doe,* 538 U.S. 84 (2003); and *Connecticut v. Doe,* 538 U.S. 1 (2003), but these decisions do not provide support for the residency requirement at issue here. In *Cutshall,* the court emphasized that under the Sex Offender Act of 1994 the plaintiff there was "free to live where he chooses, come and go as he pleases, and seek any employment he wishes." 193 F.3d, at 474. Since the Act "impose[d] no punishment" on the plaintiff there was no ex post facto violation. 193 F.3d, at 477. Since "the Act d[id] not impose any restrictions on his personal rights that are fundamental or implicit in the concept of ordered liberty, such as his procreative or marital rights," there was no violation of the procedural due process clause. 193 F.3d, at 481-82. The Supreme court emphasized the same fact in rejecting the ex post facto challenge to Alaska's registration and notice provisions. 538 U.S. at 100-101.

The residence requirement, unlike the registration and public notice provisions, does restrict where the offender lives and works. Under certain circumstances, it can infringe on his procreative or marital rights as well.

[6]Similar provisions are found in the laws of Alabama, Arkansas, California, Florida, Georgia, Illinois, Iowa, Kentucky, Louisiana, Ohio, Oklahoma, and Oregon. *Doe v. Miller,* 298 F. Supp. 2d 844, 848 n.2 (S.D. Iowa, Feb. 9, 2004), *appeal pending.*

*State v. Seering,* 2003 WL 21738894 (Iowa District Court, April 30, 2003), *appeal pending; J.L.N. v. Alabama,* 2002 WL 31399425 (Ala. Crim. App., Jan. 7, 2003), *cert. granted* (May 12, 2003).[7]

The current state of flux in judicial decisions in this area, and the short time frame under which this opinion has been drafted, impose limits on the certainty with which this office can predict how a court with jurisdiction over Tennessee's statute would rule on a constitutional challenge to the residency restrictions found in H.B.3232 or in current law. Within these limits, however, the office's best estimate is that the residency requirements found in both current law and in H.B.3232 are subject to strong constitutional challenge under the United States and Tennessee Constitutions.

Tennessee's provision that no sex offender "shall knowingly establish a residence or accept employment within one thousand feet (1,000') of the property on which any public school, private or parochial school, licensed day care center, or any other child care facility is located,"Tenn. Code Ann. §40-39-111(a), is quite similar to the Alabama law at issue in *J.L.N. v. Alabama.* The Alabama law provides that "no adult criminal sex offender shall *establish a residence* or accept employment within 2,000 feet of the property on which any school or child care facility is located." Ala. Code §15-20-26(a) (1975)(emphasis added). The Alabama law was struck down as arbitrarily broad because it "provides no means for an individualized determination by a court in those rare instances, such as this one, where a convicted sex offender and his victim wish to marry." *J.L.N. v. Alabama,* at \*10.[8]

H.B.3232 is worded more like Iowa's law, making it an offense for a sex offender to "*reside* within two thousand feet of the real property comprising a public or nonpublic elementary or secondary school or a child care facility." Iowa Code § 692A.2A(2)(2002)(emphasis added).[9] This language was struck down as to a sex offender who sought to re-join his wife and children after release from incarceration. *State v. Seering,* 2003 WL 21738894 (Iowa District Court, April 30, 2003), *appeal pending,* at \*1-2. Using an analysis similar to that used by the court in *J.L.N. v. Alabama,* the court found the statute violated procedural due process. The court also found the law violated the ex post facto clause because of its excessive punitive effect on a person who committed his offense before the residency requirement took effect, the Fifth Amendment because of the self-reporting requirement, and the Eighth Amendment cruel and unusual punishment clause because it is disproportionate to the crime. *Seering,* at \*10-14.

---

[7]This office is aware of no cases in which a residency requirement was upheld in the face of a constitutional challenge. In one case a similar requirement, no contact with minor children, was upheld, but the court found insufficient evidence to reach the merits. *Ex Parte Alakayi,* 102 S.W. 3d 426 (Tex. App. April 10, 2003), *appellant's pet. for discretionary rev. refused* (Feb. 4, 2004)(upholding denial of sex offender's petition to modify conditions of community supervision to allow him to continue to have contact with his two year old son).

[8]The offender had originally been convicted of statutory rape as a result of consensual sex with his then-15 year old girlfriend. After the offender was released from incarceration, his victim and her mother moved into his house, and the offender expressed the desire to marry his victim. *Id.,* at \*1, 10.

[9]Unlike Tennessee and Alabama, Iowa does not impose any prohibition on the location of an offender's employment.

In deciding a class action challenge to the same provision of Iowa law, a federal court found many of the same constitutional defects: unconstitutional infringement of rights to family choice and travel, deprivation of liberty interest with insufficient procedural due process, excessive punitive effect in violation of ex post facto clause, and compelled self-incrimination in violation of the Fifth Amendment. *Doe v. Miller*, 298 F. Supp. 2d 844, 866-879 (S.D. Iowa, Feb. 9, 2004), *appeal pending*.

The courts in *J.L.N., Miller,* and *Seering* identified the fundamental right at issue under the due process clause of the Fourteenth Amendment as the right "to live with his wife and children and to carry on his daily routine within the shelter and support of his family"(*Seering*, at *5), "to determine those members of the family with whom one wants to reside" (*Doe v. Miller* at 873), or "to marry"(*J.L.N.* at *6). The Supreme Court has recently expanded the scope of the right to privacy found in the substantive due process clause of the Fourteenth Amendment. In *Lawrence v. Texas* 123 S. Ct. 2472 (U.S. 2003), the court struck down a Texas statute making homosexual intercourse illegal, even when performed by consenting adults in the privacy of their home. The Court stressed that "[l]iberty protects the person from unwarranted government intrusions into a dwelling or other private places." 123 S.Ct. at 2475. The court in *Lawson* specifically noted, "our laws and tradition afford constitutional protection to personal decisions relating to marriage, procreation, contraception, *family relationships, child rearing*, and education." *Id.*, at 2481 (emphasis added).

When such fundamental rights are implicated, the burden is on the state to prove that the statute is narrowly tailored to achieve a compelling state interest and that the least restrictive means are used. *Seering*, at *6, 9.[10] It appears unlikely Tennessee could meet this burden under current law or H.B.3232.[11] Thus the residency restriction is subject to serious challenge under the substantive due process requirement of the Fourteenth Amendment.

Furthermore, as under the Iowa and Alabama provisions, there is no statutory procedure to exclude offenders who want to marry their victims, who wish to return to dwelling places they maintained before their incarceration, or who wish to rejoin family members who live within the prohibited zone. Thus the Tennessee provision is subject to serious challenge on procedural due process grounds. Finally, the Tennessee provision would likely be unconstitutional as applied to

---

[10]The Iowa statute failed this test because "There are simply no facts which prove or even suggest children will be rendered more safe from the predations of sex offenders because of the 2000-foot residency restriction." *Id.* In addition, the court concluded that "such a residency restriction is unlikely to enhance public safety when a sex offender can walk past a school or day care as often as he/she chooses, be in the neighborhood of a school or day car, and be employed in a school or day care center." *Id.*, at *9.

[11]Although Tennessee's statute does restrict where a sex offender can work, it does not restrict an offender's ability to "walk past" a school or "be in the neighborhood." If Tennessee's law were challenged under similar circumstances, it would likely survive this challenge only if the State could provide some factual basis upon which a court could conclude that the residency restriction would make children more safe from sex offenders, and that it achieves this objective by using the least restrictive means. In view of the insufficiency of the extensive expert proof considered in *Seering* and *Miller,* it appears that meeting this burden as to Tennessee's residency restriction would be difficult.

offenders who committed their offenses before the effective date of the residency restriction, July 1, 2003.[12]

Quite aside from these vulnerabilities under the United States Constitution, the residency restriction is subject to challenge under the Tennessee constitution. In *Campbell v. Sundquist*, 926 S.W. 2d 250 (Tenn. App. 1996), the court struck down the Homosexual Practices Act as unconstitutional under Article I, sections 3, 7, 8, 19, and 27 of the Tennessee Constitution. 926 S.W.2d at 260, 265-66. In reaching this result, the court emphasized that the "right of individual privacy" protected under the Tennessee Constitution is broader than that protected under the federal constitution. *Id.*, at 262. The Tennessee Constitution protects, as a fundamental right, activity which "involv[es] intimate questions of personal and family concern." *Id.*, at 266. Residing with one's family members is an activity involving intimate questions of personal and family concern. Since it may not be possible to show that the residency restriction is narrowly drawn to increase protection of potential victims while avoiding unnecessary interference with sex offenders' ability to reside with family members, a reviewing court might well find the restriction unconstitutional under the Tennessee Constitution.

PAUL G. SUMMERS
Attorney General and Reporter

MICHAEL E. MOORE
Solicitor General

DAVID M. HIMMELREICH
Deputy Attorney General

Requested by:

Robert S. "Bob" McKee
State Representative, 23rd Legislative District
208 War Memorial Building
Nashville, TN 37243-0123

---

[12]2003 Tenn. Pub. Acts, Ch. 95, §1.