IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| MR. & MRS. JOHN AND JANE DOE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:04-CV-566 |
| | ) | |
| PHIL BREDESEN, Governor of the | ) | |
| State of Tennessee, | ) | |
| RANDALL NICHOLS, District Attorney | ) | |
| for the 6th Judicial District of the State of | ) | |
| Tennessee, and MARK GWYN, Director | ) | |
| of the Tennessee Bureau of Investigation, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This civil action is before the court for consideration of "Defendants' Motion

to Dismiss" [doc. 20] and plaintiffs' "Cross Motion For Judgment on the Pleadings" [doc.

23]. Plaintiffs have responded to defendants' motion [doc. 23], and defendants, Mark Gwyn

and Governor Phil Bredesen,[1] have filed a "Reply Memorandum" [doc. 24].

Plaintiffs have brought suit pursuant to 42 U.S.C. § 1983 for the alleged

violation of their federal constitutional rights and seek injunctive relief and a declaratory

judgment. Plaintiffs contend that certain provisions of the Tennessee Sexual Offender and

Violent Sexual Offender Registration, Verification, and Tracking Act of 2004, codified at

Tennessee Code Annotated ("Tenn. Code Ann.") § 40-39-201, *et seq*., are unconstitutional.

---

[1] Defendant Randall Nichols was dismissed from the case by an agreed order [doc. 13].

Plaintiff John Doe also contends that Tenn. Code Ann. § 39-17-1004, the statutory provision used to classify him as a violent sexual offender, is unconstitutional.

## I.

### *Background*

The facts recited herein are as represented by the plaintiffs. At some point between January 1, 1995, and July 1, 2003, plaintiff John Doe pled guilty in federal court to receiving and distributing child pornography in violation of 18 U.S.C. § 2252(a)(2). At the time of John Doe's conviction, his offense was classified under Tennessee law as a "sexual offense." Also between January 1, 1995, and July 1, 2003, John Doe bought a home in Knox County, Tennessee, that is within one thousand feet of a school. At the time of the purchase, there were no restrictions concerning where a sexual offender could live. Plaintiff Jane Doe married John Doe in 1998, and they set up residence in their present home. Two children have been born since their marriage. In addition, Jane Doe has a minor child from a previous marriage who has lived with the Does since they were married.

The State of Tennessee enacted the "Sexual Offender Registration and Monitoring Act ("SORMA")," Tenn. Code Ann. § 40-39-101, *et seq*., that became effective July 1, 2003. Under § 40-39-111(a) of this law, a sexual offender was prohibited from "knowingly establish[ing] a residence or accept[ing] employment within one thousand feet (1,000') of the property on which any public school, private or parochial school, licensed day

2

care center, or any other child care facility is located." Tenn. Code Ann. § 40-39-111(a). The SORMA also prohibited a sexual offender from establishing a residence where a minor resided unless the offender was the minor's parent. Tenn. Code Ann. § 40-39-111(c).

John Doe's criminal offense remained classified as a "sexual offense" under Tenn. Code Ann. § 40-39-102(5). Pursuant to Tenn. Code Ann. § 40-39-107, after ten years, a sexual offender could petition the circuit court where he or she resides to be relieved of the registration and monitoring requirements and to have the information about the offender expunged from the system.

Tennessee enacted the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004 ("the Act" or "2004 Act"), Tenn. Code. Ann. § 40-39-201, *et seq.*, on August 1, 2004. This replaced the earlier law set out at Tenn. Code Ann. § 40-39-101, *et seq.* Under this new law, John Doe's criminal offense was reclassified as a "violent sexual offense" and he is now considered to be a "violent sexual offender." Tenn. Code Ann. § 40-39-202(23) and (24). In addition, pursuant to Tenn. Code Ann. § 40-39-207(g)(1)(B), a violent sexual offender must remain on the Sexual Offender Registry the remainder of his or her life.

The 2004 Act also changed the living and working restrictions placed on sexual offenders by prohibiting them from knowingly residing with a child not his or her own and from knowingly living or working within one thousand feet of a school. The word "establish" was removed, so subsections (a) and (c) were no longer prospective in their

3

application and effect.

John Doe asserts that to his understanding he was never in violation of Tenn. Code Ann. § 40-39-111 because he established his residence before the enactment of that law on July 1, 2003. However, John Doe states that Tenn. Code Ann. § 40-39-211(a) and (c) apply to him regardless of when he established his residence and began living with his step child. Application of these statutory provisions to him would result in John Doe no longer being able to live with his family.

## II.

### *Defendants' Motion to Dismiss*

#### A. <u>Standard of Review</u>

Defendants' motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6). "Motions to dismiss under Rule 12(b)(6) are designed to test 'whether a cognizable claim has been pleaded in the complaint.'" *Fed. Express Corp. v. U. S. Postal Serv.*, 40 F. Supp. 2d 943, 947 (W.D. Tenn. 1999) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). "To survive a motion to dismiss under Rule 12(b)(6), 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (quoting *Scheid*, 859 F.2d at 436).

4

When reviewing a motion for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations in the complaint as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The court does not have to accept as true legal conclusions or unwarranted factual inferences, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), and may dismiss a complaint pursuant to Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984).

## B. Tenn. Code Ann. § 40-39-211

Both plaintiffs alleged that § 40-39-211(a) and (c) are unconstitutional in their application to them as the statutory provisions infringe upon their fundamental right to family privacy. John Doe also alleges that these statutory provisions are unconstitutional as applied to him because they impose a punishment in violation of the *Ex Post Facto* Clause; they violate his right to procedural due process under the Fourteenth Amendment; and they violate his right against self-incrimination under the Fifth Amendment.

Defendants argue that plaintiff John Doe lacks standing to challenge Tennessee Code Annotated § 40-39-211. The court believes that the issue is not one of standing but

5

rather one of mootness. The issue regarding the application of Tenn. Code Ann. § 40-39-211 to John and Jane Doe has become moot because of revisions made to the statute since this case was filed.

On August 1, 2005, modifications to the 2004 Act became effective. Section 40-39-211 now reads in pertinent part as follows:

> (a) While mandated to comply with the requirements of this chapter, no sexual offender, as defined in § 40-39-202(16), or violent sexual offender as defined in § 40-39-202(24), whose victim was a minor, shall **knowingly establish** a primary or secondary residence or any other living accommodation, or **knowingly accept** employment, within one thousand feet (1,000') of the property line on which any public school, private or parochial school, licensed day care center, or any other child care facility is located.
>
> . . . .
>
> (c) While mandated to comply with the requirements of this part, no sexual offender, as defined in § 40-39-202(16), or violent sexual offender, as defined in § 40-39-202(24), whose victim was a minor, shall **knowingly establish** a primary or secondary residence or any other living accommodation where a minor resides. Notwithstanding this subsection (c), such an offender may reside with a minor, if the offender is the parent of the minor, unless one (1) of the following conditions applies:
>
> (1) The offender's parental rights have or are in the process of being terminated as provided by law, or
>
> (2) Any minor or adult child of the offender was a victim of a sexual offense or violent sexual offense committed by the offender.

Tenn. Code Ann. § 40-39-211(a), (c) (emphasis added).

6

At the time this lawsuit was filed and prior to the revisions cited above, Tenn.

Code Ann. § 40-39-211 provided in pertinent part as follows:

> (a) No sexual offender, as defined in § 40-39-202(15), or violent sexual offender, as defined in § 40-39-202(23), shall **knowingly reside or work** within one thousand feet (1,000') of the property line on which any public school, private or parochial school, licensed day care center, or any other child care facility is located.
>
> . . . .
>
> (c) No sexual offender, as defined in § 40-39-202(15), or violent sexual offender, as defined in § 40-39-202(23), shall **knowingly reside** where a minor resides. Notwithstanding this subsection (c), such an offender may reside with a minor if the offender is the parent of the minor, unless one (1) of the following conditions applies:
>
> (1) The offender's parental rights have been or are in the process of being terminated as provided by law; or
>
> (2) Any minor or adult child of the offender was a victim of a sexual offense or violent sexual offense committed by the offender.

Tenn. Code Ann. § 40-39-211(a),(c). At the time the complaint was filed, John Doe was residing within one thousand feet of a school and with a child not his own, and, therefore, a case and controversy existed concerning whether John Doe could be prosecuted under the statute based on his living arrangements and the location of his residence. Thus, plaintiffs had standing to challenge this statute at the time the complaint was filed.

7

However, the recent amendments to the statute make Tenn. Code Ann. § 40-39-211(a) and (c) prospective. The record before the court shows that John Doe has not knowingly established a residence or living arrangements with a minor contrary to the current statute, and there is no showing that he is under the threat of prosecution for violation of the statute.

Under Article III, Section 2, of the Constitution, federal courts have authority to adjudicate only ongoing cases or controversies, and this requirement is no longer met when the dispute has become moot. *Cleveland Nat. Air Show, Inc. v. U.S. Dep't of Transp.*, 430 F.3d 757, 761 (6th Cir. 2005) (citing *Chirco v. Gateway Oaks, L.L.C.*, 384 F.3d 307, 309 (6th Cir. 2004)). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944, 1951, 23 L. Ed. 2d 491 (1969). "An actual live controversy 'must be extant at all stages of review.'" *Chirco,* 384 F.3d at 309 (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S. Ct. 1055, 1068, 137 L. Ed. 2d 170 (1997)).

Plaintiffs' claims concerning the application of § 40-39-211(a) and (c) have become moot by the 2005 revisions to the statute. There is no longer a case or controversy regarding how that statutory provision affects them. The statute is now prospective and does not reach the plaintiffs whose residence and living arrangements were established when the lawsuit was filed and when the recent revisions went into effect. Accordingly, plaintiffs' claims based on § 40-39-211(a) and (c) will be dismissed as moot.

C. <u>Tenn. Code Ann. § 40-39-202(24),(25) and § 40-39-207</u>

John Doe contends that Tenn. Code Ann. § 40-39-202(24) and (25)[2] and § 40-39-207 violate the prohibition against *ex post facto* laws because these provisions impose an affirmative disability or restraint on him that is the equivalent of punishment. He contends that under the amended law he is classified as a violent sexual offender who must report in person quarterly to police authorities to update his information, and he must do this for life. Under the prior law, he was classified as a sexual offender who after ten years could petition to be removed from the registry. Thus, John Doe argues that this reclassification is increased punishment and violates the prohibition against *ex post facto* laws.

Section 40-39-202(24) defines "violent sexual offender" and § 40-39-202(25) defines "violent sexual offense." What is relevant to John Doe is subdivision (25), subpart (F) that defines a violent sexual offense to be the commission of the "[a]ggravated sexual exploitation of a minor, under § 39-17-1004." The parties are in agreement that John Doe's conviction in federal court falls within the conduct encompassed by § 39-17-1004 and that this statutory provision is used to classify him as a "violent sexual offender." Section 40-39-207(f)(1)(B) sets the requirement that a person convicted of a violent sexual offense as defined in § 40-39-202(25) must comply with the registration, verification, and tracking

_____

[2] The complaint refers to sub-parts (23) and (24) of section 40-39-202. Pursuant to the amendments that became effective in 2005, those sub-parts are now delineated as (24) and (25) respectively and are materially the same.

9

requirements of the Act for life. Section 40-39-204(b) establishes that violent sexual offenders must report in person on a quarterly basis to update information. John Doe contends that these statutory provisions impose an affirmative disability or restraint on him that equates to the imposition of punishment.

Defendants argue that the requirements imposed on sexual offenders by these statutory provisions are reasonable regulatory measures, not punishment. Therefore, they do not violate the *ex post facto* prohibition. The court agrees.

"The *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham*, 450 U.S. 24, 28, 101 S. Ct. 960, 964, 67 L. Ed. 2d 17 (1981) (footnote omitted) (quoting *Cummings v. Missouri*, 4 Wall. 277, 325-26, 18 L. Ed. 356 (1867)). "[T]wo critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weave*r, 450 U.S. at 29, 101 S. Ct. at 964 (footnote and citations omitted).

However, not every change that alters a person's situation to his or her detriment is prohibited by the *Ex Post Facto* Clause. *See Collins v. Youngblood*, 497 U.S. 37, 50, 110 S. Ct. 2715, 2723, 111 L. Ed. 2d 30 (1990); *see also Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3, 115 S. Ct. 1597, 1602, 131 L. Ed. 2d 588 (1995) ("After

10

Collins, the focus of the *ex post facto* inquiry is not whether a legislative change produces some ambiguous sort of 'disadvantage' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which the crime is punishable.").

In addition, retrospective application alone is not sufficient to establish an *ex post facto* violation. "[N]o *ex post facto* violation occurs if a change does not alter 'substantial personal rights,' but merely changes 'modes of procedure which do not affect matters of substance.'" *U.S. v Ristovski*, 312 F.3d 206, 210 (6ᵗʰ Cir. 2002) (quoting *Miller v. Florida*, 482 U.S. 423, 430, 107 S. Ct. 2446, 2451, 96 L. Ed. 2d 351 (1987)).  However, "a change in the law that alters a substantial right can be ex post facto 'even if the statute takes a seemingly procedural form.'" *Ristovski*, 312 F.3d at 211 (quoting *Weaver*, 450 U.S. at 29 n.12, 101 S. Ct. at 964).  The general rule that has developed from the case law "is that a change is procedural, and does not affect a substantial right if the change does 'not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt.'" *Ristovsk*i, 312 F.3d at 211 (quoting *Weaver*, 450 U.S. at 29 n.12, 101 S. Ct. at 964).

In *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003), the Supreme Court considered for the first time the issue of whether a sexual offender registration and notification law constitutes retroactive punishment in violation of the *Ex Post Facto* Clause. *Id*. at 92, 123 S. Ct. at 1146.  The Court set out the framework for analyzing *ex post facto* challenges in this context:

We must ascertain whether the legislature meant the statute to establish civil proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil. Because we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.

*Id.* at 92, 123 S. Ct. at 1146-47(internal quotations and citations omitted).

The Supreme Court determined in *Smith* that Alaska intended to establish civil proceedings when it enacted its sexual offender and registration law, and therefore the legislature had not intended to impose punishment. The Court then proceeded to the second step of the analysis and examined the effects of the act by referring to the factors set out in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83 S. Ct. 554, 567-68, 9 L. Ed. 2d 644 (1963). The Court stated:

Because the *Mendoza-Martinez* factors are designed to apply in various constitutional contexts, we have said they are neither exhaustive nor dispositive, but are useful guideposts. The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.

*Smith*, 538 U.S. at 97, 123 S. Ct. at 1149 (internal quotations and citations omitted). The Supreme Court ultimately held that Alaska's sexual offender registration and notification law did not violate the *Ex Post Facto* Clause.

### Intent of the Tennessee Legislature

In *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999), the Sixth Circuit addressed multiple constitutional challenges to the original Tennessee Sex Offender Registration and Monitoring Act enacted in 1994. The Court noted that since the lawsuit at issue had been filed, the law had been amended; however, as enacted, the law had no express statement of purpose. *Id*. at 474. After relying primarily on the language of the statute, the Court ultimately found "no indication that the Tennessee legislature intended the Act to be a punitive measure." *Id.*

The 2004 Act contains a specific statement of legislative findings and intent. Tenn. Code Ann. § 40-39-201. This provision provides in part that protecting the public from sexual offenders is of paramount interest; that there is a compelling public interest for the public to have information concerning sexual offenders in order to protect themselves and their children; and that the registration of offenders and the release of specified information about them furthers the governmental interest of public safety. This statutory provision also specifically states:

> To protect the safety and general welfare of the people of this state, it is necessary to provide for continued registration of offenders and for the public release of specified information regarding offenders. This policy of authorizing the release of necessary and relevant information about offenders to members of the general public is a means of assuring public protection and **shall not be construed as punitive**;
>
> **. . . .**

The general assembly also declares, however, that in making information about certain offenders available to the public, the general assembly **does not intend that the information be used to inflict retribution or additional punishment on any such offenders.**

Tenn. Code Ann. § 40-39-201(b)(6), (8) (emphasis added).

The court concludes that with the 2004 Act, the Tennessee Legislature intended to implement a civil regulatory scheme, not one of punishment. This being the case, the court must next determine whether the effects of the Act are so punitive that when applied they negate the State's nonpunitive intent. To make this determination, the court looks to the guideposts set out by the Supreme Court in *Mendoza-Martinez*.

### Effects of the Tennessee Act

The court will first examine the affirmative disability or restraint factor as that is the only factor argued by John Doe. He contends that reclassifying him as a violent sexual offender and requiring him to update his information in person every 90 days for life creates such a disability and restraint as to constitute punishment. He argues that the Alaska law at issue in *Smith* did not require the offender to make personal periodic updates and the case did not involve the reclassification of the offender's crime to a more severe status. John Doe contends, therefore, that the case is distinguishable and not controlling.[3]

---

[3] During oral argument before the Ninth Circuit, the State of Alaska represented that registrants had to personally appear for annual and quarterly registrations. *Doe I v. Otte*, 259 F.3d 979, 984 n.4 (9th Cir. 2001). However, the Supreme Court noted that the "Court of Appeals was
(continued...)

Courts that have addressed quarterly in-person registration updates for sexual offenders have upheld them as nonpunitive. In *Doe v. Pataki*, 120 F.3d 1263 (2nd Cir. 1997), the Second Circuit addressed the in-person registration requirements of the New York sexual offender statute. Under the New York law, certain high risk offenders are required to register personally every 90 days. The Court concluded that the registration burdens were not so severe as to transform the regulatory scheme into a punitive one. " *Id.* at 1285.

> Although we recognize that the duty to register in person every 90 days for a minimum of ten years is onerous, we do not believe that this burden is sufficiently severe to transform an otherwise nonpunitive measure into a punitive one. As discussed previously, the Supreme Court has consistently upheld far heavier burdens against ex post facto challenges, including deportation, termination of financial support, and loss of livelihood. Moreover, the legislature's decision to subject persons with a greater risk of re-offense to more onerous registration requirements is reasonable.

*Id.* at 1285 (footnote omitted). The Court went on to hold that the registration "provisions of the Act do not constitute punishment for purposes of the Ex Post Facto Clause." *Id.*

The District Court for the Eastern District of Texas addressed an *ex post facto* challenge to the Texas Sex Offender Registration Program ("TSORP") in *Creekmore v. Attorney Gen. of Tex.*, 341 F. Supp. 2d 648 (E.D. Tex. 2004). Under the Texas law, certain sexual offenders must report to the local law enforcement authorities once every 90 days. The district court applied the two-step analysis set forth in *Smith* and the factors from

---

[3](...continued)
under a misapprehension" because on its face, the Alaska statute "does not require these updates to be made in person." *Smith*, 538 U.S. at 101, 123 S. Ct. at 1151.

15

*Mendoza-Martinez*.  Plaintiff Creekmore contended in part that the TSORP has a punitive

effect because the registration and notification requirements constitute an affirmative

restraint or disability.  The district court stated:

> Texas may require in-person registration for any number of
> rational, non-punitive purposes.  It serves the state's goal of
> keeping its citizenry safe.  The statute specifically provides that
> the person completing and verifying the registration information
> must provide proper identification.  The state has a non-punitive
> interest in making sure the correct person is completing the
> registration.  The in-person requirement ensures that nonpublic
> information on the registration form stays out of the public view.
> When a registrant picks up the form in person, there is little to
> no chance that the form, with its private information, will be
> mailed to the wrong house, or picked up by the wrong person.
>
> The court concludes, therefore, that TSORP's registration
> requirements alone are not enough to render the statute punitive
> in effect.  The state has any number of rational, non-punitive
> reasons for requiring in-person registration. The burden imposed
> by these requirements, while onerous, is not as severe as other
> provisions upheld by the Supreme Court.

*Id.* at 661 (internal citation omitted).

The same may be said about the regulatory scheme of the Tennessee Act.

Tennessee has a compelling, nonpunitive interest in keeping its citizens, especially children,

safe from sexual offenders, particularly in light of the high rate of recidivism among such

offenders. *Cutshall*, 193 F.3d at 476. Keeping registration information current and

disseminating that information to alert the public advances that interest and promotes the

welfare of Tennessee's citizenry.  The quarterly in-person reporting requirements for violent

sexual offenders and the length of the time those requirements are in effect are reasonably

related to the danger posed by recidivism.

In addition, the Tennessee Act does not impose physical restraint, so it "does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." *Smith,* 538 U.S. at 100, 123 S. Ct. at 1151. Those subject to the Act can change jobs or residences.[4] The quarterly in-person registration that John Doe is subject to may be burdensome, but such an obligation is "less harsh than the sanctions of occupational debarment" the Supreme Court has held to be nonpunitive. *Id.* (citing *Hudson v. United States*, 522 U.S. 93, 104, 118 S. Ct. 488,139 L. Ed. 2d 450 (1997) (forbidding further participation in the banking industry); *De Veau v. Braisted*, 363 U.S. 144, 80 S. Ct. 1146, 4 L. Ed. 2d 1109 (1960) (forbidding work as a union official); *Hawker v. New York*, 170 U.S. 189, 18 S. Ct. 573, 42 L. Ed. 1002 (1898) (revocation of a medical license)).

The court concludes that the reporting requirements for violent sexual offenders under the 2004 Act do not constitute an affirmative restraint or disability. The court will briefly look at the remaining *Mendoza-Martinez* factors that are relevant here.

Concerning the factor of whether the regulatory scheme has been regarded in our history and traditions as a punishment, the court relies on the Supreme Court's discussion of this factor in *Smith*. The Supreme Court concluded that colonial punishments such as branding and banishment of criminals are not the equivalent of the registration of sexual

_____

[4] While provisions of the Act restrict sexual offenders from establishing a residence or employment within a certain radius of schools or child care facilities, offenders do not need permission to move or change jobs and are free to live and work away from those restricted areas.

17

offenders and the dissemination of information about them to the public. *Smith*, 538 U.S. at 97-99, 123 S. Ct. at 1149-51. As the Court noted, the stigma associated with sexual offender registration and notification laws "results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public." *Id*. at 98, 123 S. Ct. at 1150.

Whether the Act promotes the traditional aims of punishment is a factor that does not weigh heavily in this case. There may be some deterrent effects from the operation of the Act, and deterrence is a purpose of punishment. However, that does not make the law punitive. "Any number of governmental programs might deter crime without imposing punishment. To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' . . . would severely undermine the Government's ability to engage in effective regulation." *Id*. at 102, 123 S. Ct. at 1152 (internal quotation and citations omitted).

Whether the Act has a rational connection to a nonpunitive purpose is a "[m]ost significant" factor in the determination of whether or not the effects of the statute are punitive. *Smith*, 538 U.S. at 102, 123 S. Ct. at 1152 (citation omitted). The Act has the nonpunitive purpose of protecting the public, especially children, from sexual offenders, and this purpose is effected by alerting the public to sexual offenders located in their community. Sexual offenders present a high risk of recidivism. *Id*. at 103, 123 S. Ct. at 1153. In view of this risk, the Tennessee Legislature could well conclude that the regulatory scheme of the Act would protect the public by reducing the risk of repeated sexual offenses. This factor

strongly supports the conclusion that the Act is nonpunitive.

The final factor relevant to the court's analysis is whether the Act is excessive in relation to its regulatory purpose.[5]  "The excessiveness inquiry of our *ex post facto* jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy.  The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective."  *Id*. at 105, 123 S. Ct. at 1154.  "Congress, and the legislature of the several states, have considered the egregiousness of sexual crimes, particularly where children are concerned, and studies have indicated that sexual offenders have high rates of recidivism."  *Cutshall*, 193 F.3d at 476. The regulatory scheme of the Act is reasonable in light of the State's nonpunitive objective of protecting the health and safety of its citizens, in particular its children.  The Act is not excessive.

After considering the relevant factors, the court concludes that the effects of the Act are not so punitive as to negate the State's intent to create a civil regulatory scheme. The Act is nonpunitive.  Therefore, applying it retroactively does not violate the *Ex Post Facto* Clause.

---

[5] The court has considered the two remaining *Mendoza-Martinez* factors, whether the behavior to which the regulation applies is already a crime and whether it comes into play only on a finding of scienter, and finds that these factors carry very little weight and have little significance in the court's analysis.

Plaintiff John Doe also argues that the amendments to the Act that reclassify him as a violent sexual offender rather than as a sexual offender, who could petition for removal from the registry after ten years, violate the *Ex Post Facto* Clause. For the reasons discussed above, this argument fails.

The classification of sexual offenders under the Act is part of a nonpunitive regulatory framework. John Doe's federal conviction remains the same, and his punishment for the crime did not change. What did change is the classification of that crime within a nonpunitive regulatory scheme designed to address the danger of recidivism and to protect the health and safety of the public. John Doe's reclassification within the Act's framework is not punishment; rather it is a function of a changing and evolving regulatory scheme that applies to him because of the particular crime he committed. "The *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Smith*, 538 U.S. at 103, 123 S. Ct. at 1153. Since the Act's regulatory scheme is not punishment, changes made within that scheme that alter John Doe's status and reporting requirements are not punishment and do not violate the *Ex Post Facto* Clause.

## D. Tenn. Code Ann. § 39-17-1004

In the complaint, John Doe alleges that Tenn. Code Ann. § 39-17-1004 "is facially unconstitutional as the statute is vague and overbroad and therefore cannot be used for the purpose of classifying Plaintiff as a 'violent sexual offender' under Tenn. Code Ann. § 40-39-202(23)." John Doe also asks the court to "issue a declaratory judgment declaring Tenn. Code Ann. § 39-17-1004 unconstitutional."

Defendants address this argument in their brief in support of their motion to dismiss. However, John Doe does not address this issue or specifically mention this statutory provision in the response and cross motion for judgment on the pleadings filed by plaintiffs. The court concludes that this issue has been abandoned.

In any event, the court does not need to reach the issue. Having found the changes in classification and reporting requirements to be nonpunitive administrative procedures, the court does not have to address the facial constitutional challenge to § 39-17-1004. "Supreme Court precedent makes clear that courts should avoid unnecessary adjudication of constitutional issues." *Adams v. City of Battle Creek*, 250 F.3d 980, 986 (6th Cir. 2001) (citing *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S. Ct. 466, 80 L. Ed. 688 (1936)). When a statutory or non-constitutional basis exists for deciding a case, it is not necessary to reach the constitutional issue. *Adams*, 250 F.3d at 986.

Because the court finds that defendants' motion should be granted, there is no need to reach the merits of plaintiffs' motion for judgment on the pleadings. Accordingly, for the reasons stated herein, defendants' motion will be granted, and plaintiffs' motion will be denied. This case will be dismissed. An order reflecting this opinion will be entered.

ENTER:


_____ s/ Leon Jordan _____
United States District Judge